**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ARTHUR LASTER | Criminal Action No. 06-456 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Arthur Laster's ("Defendant") Motion for Resentencing Per 18 U.S.C. § 3582(c)(1)(A)(i), the First Step Act ("the Act"). (ECF No. 8.) The United States of America (the "Government") opposed (ECF No. 12), and Defendant did not reply. The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, which applies to criminal cases under Local Criminal Rule 1.1. For the reasons below, the Court denies Defendant's Motion.

## I.    BACKGROUND

On August 10, 1999, Defendant entered a guilty plea to knowingly and intentionally conspiring and agreeing with others to distribute and possess with intent to distribute 50 grams or more of cocaine base, contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. (Gov't's Opp'n Br. 2 (citing Presentence Investigation Report ("PSR") ¶ 1), ECF No. 12.) This guilty plea related to numerous occasions between 1996 and 1999 where Defendant sold cocaine base to confidential informants and conspired to distribute over 50 grams of cocaine. (*Id.* (citing PSR ¶¶ 7-10, 12-13).) On March 8, 2001, this Court imposed a 24-month term of imprisonment,

followed by five years of supervised release. (*United States v. Laster*, No. 99-453 (D.N.J. 1999), ECF No. 19.)

At the time of sentencing, Defendant was classified as a career offender with a violent criminal history. (Gov't's Opp'n Br. 3 (citing PSR ¶ 62).) Defendant's prior convictions included assault, aggravated assault, weapons possession, and narcotics-related convictions. (*Id.* (citing PSR ¶¶ 41-56, 58-60).) In fact, Defendant was on parole at the time he committed the instant offense. (*Id.* (citing PSR ¶¶ 58-60).)

While on supervised release for the instant offense, Defendant was arrested for multiple violent crimes against his girlfriend, including (1) for punching her in the face and throwing her to the ground, (2) for kneeing her in the ribs and holding a knife to her throat, threatening to kill her, and (3) for stabbing her to death (a crime for which he pled guilty in New Jersey State Court and served 14 years' imprisonment). (*See generally* Pet. & Order, ECF No. 3; Gov't's Opp'n Br. 3.) For this misconduct, Defendant was charged with violating the terms of his supervised release. (*See generally* Pet. & Order.) Defendant pled guilty to two violations of supervised release: (1) the violation of committing the state crime for the killing of his girlfriend; and (2) the violation of engaging in unlawful substance abuse for testing positive for cocaine, marijuana, and opiates. (*See* ECF No. 6.) The Honorable Anne E. Thompson, U.S.D.J. (ret.), revoked Defendant's supervised release and sentenced him to 51 months' imprisonment, followed by 9 additional months of supervised release. (*Id.*)

Defendant completed his New Jersey prison sentence for killing his girlfriend and is now incarcerated at FCI Ray Brook. (Gov't's Opp'n Br. 4.) Defendant's 51-month federal sentence began after he completed his state sentence. (*See* Sentence Computation Data, Gov't's Opp'n Br.,

Ex. 1, ECF No. 13.) Defendant's projected release date with credit for good conduct is November 24, 2025, and his full term expires on July 11, 2026. (*Id.*)

Only three months into his federal sentence, Defendant sent e-mail correspondence to the Bureau of Prisons ("BOP") seeking compassionate release. (Def.'s Moving Br., Ex. A., ECF No. 8.) The following day, Defendant sent follow-up e-mail correspondence to the BOP, indicating that he had previously submitted a "hardcopy request to [his] Unit Team well over 30 days" prior. (*Id.*) Presumably receiving no response, Defendant filed the instant Motion, which is ripe for resolution.

## II.   **LEGAL STANDARD**

A district court generally has limited authority to modify a federally imposed sentence once it commences. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (citing *Dillon v. United States*, 560 U.S. 817, 825 (2010)). The Act, however, permits district courts to grant compassionate release where "extraordinary and compelling reasons" support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>      (i) extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c). As such, under the Act, a district court may grant a compassionate release motion if it finds "that the sentence reduction is (1) warranted by extraordinary and compelling reasons; (2) consistent with applicable policy statements issued by the Sentencing Commission;

and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a) . . . ." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (internal quotations omitted) (citing 18 U.S.C. § 3582(c)(1)(A)). District courts are not bound "by the [Sentencing] Commission's policy statement" for defendant-filed compassionate release motions. *Id.* at 259. But the policy statement provides guidance, as it lists examples of medical conditions that may qualify as extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13, cmt. N.1(A)(i) (reflecting that the standard is met if a defendant has a terminal illness, serious medical condition, or deteriorating health).

III.    **DISCUSSION**

At the outset, the Government does not contest that Defendant's Motion may be considered by the Court, as Defendant satisfied his administrative remedies requirement by petitioning the BOP for compassionate release over 30 days before filing the instant Motion. (Gov't's Opp'n Br. 11 ("[I]t appears [Defendant] met the exhaustion requirement . . . .").) The Court thus turns directly to the merits of Defendant's Motion and addresses *first* whether he has demonstrated extraordinary and compelling reasons for release that are consistent with any applicable policy statements; and *second*, whether the 18 U.S.C. § 3553(a) factors support a reduction in sentence.

A.    **Defendant Fails to Show Extraordinary and Compelling Reasons for Release.**

Defendant argues that, "[g]iven the passage of time, the fact that [he is] 15 years older, and the severely heightened punitive nature of imprisonment in th[e] COVID era," his circumstances are extraordinary and compel release to probation. (Def.'s Moving Br. 3.) He avers that because he is older, it is "more difficult to maintain proper self-care", citing the "COVID lockdowns" as contributing to this difficulty. (*Id.*) He states that he suffers from hypertension, arthritis, and a spinal injury that limits his range of motion. (*Id.* at 1.) And he shares that his brother is dying from

cancer and that he will likely not see him again if he is forced to serve the remainder of his sentence. (*Id.* at 3.)

Unsurprisingly, the Government contends that Defendant has failed to demonstrate extraordinary and compelling reasons for release. (Gov't's Opp'n Br. 11-18.) It argues that Defendant's list of medical conditions is contradicted by his medical records, and even if Defendant has the medical conditions, they do not amount to extraordinary and compelling circumstances. (*Id.* at 11-12.) The Government notes that Defendant reports having already been diagnosed with and recovered from COVID, and Defendant does not make any showing that he suffered severe, lasting effects from the illness. (*Id.* at 14.) The Government argues that vaccinated individuals, such as Defendant (*see* Medical Records 19-20), do not satisfy the extraordinary and compelling standard. (Gov't's Opp'n Br. 15.) Finally, the Government avers that Defendant's family circumstances are similarly insufficient to meet the extraordinary and compelling standard. (*Id.* at 16-18.)

Section 3582(c) does not define what constitutes "extraordinary and compelling reasons," so courts routinely look to the Sentencing Commission's policy statement governing sentence reductions. *United States v. Moe*, 571 F. Supp. 3d 267, 270 (D.N.J. 2021). Although the policy statement is not binding, it serves as a guide to help decipher the "extraordinary and compelling" language within the statute. *Andrews*, 12 F.4th at 260 ("[A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons."). Under that policy statement, a defendant meets the standard on health-related grounds if he suffers from a terminal illness or if the defendant is:

     (I)   suffering from a serious physical or medical condition,
     (II)  suffering from a serious functional or cognitive impairment, or
     (III) experiencing deteriorating physical or mental health because of
          the aging process,

> that substantially diminishes the ability of the defendant to
> provide self-care within the environment of a correctional
> facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(i)-(ii). Subsection (d) of the Application Note to § 1B1.13, the catch-all provision, examines "extraordinary and compelling reason[s] other than, or in combination with," the other three categories. *Id.* cmt. n.1(D).

    As an initial matter, the Court is unsure of either the validity or the severity of Defendant's proffered medical conditions. Defendant claims to be ailed by hypertension, but on six separate medical visits from April 20 through June 14, 2022, Defendant denied having hypertension. (*See* Medical Records, Gov't's Opp'n Br., Ex. 2 at 16, 24, 30, 36, 42, 88, ECF No. 13.) Outside of these denials, there is no other mention of hypertension in Defendant's medical records. (*See generally* Medical Records.) Additionally, Defendant's medical records indicate that Defendant reported a full range of motion of his spine as recently as May 20, 2022. (Medical Records 50.)

    But even if the Court were to set aside these inconsistencies, Defendant's proffered medical conditions do not amount to extraordinary and compelling circumstances. Courts in this district have denied compassionate release for more severe conditions. *See, e.g. United States v. Coleman*, 848 F. App'x 65, 66-67 (3d Cir. 2021) (affirming the district court's finding that defendant's asthma, high blood pressure, HIV, "weak heart," and a potentially-cancerous mass on his thyroid did not constitute extraordinary and compelling reasons for purposes of the Act); *United States v. Martines*, No. 94-127-3, 2022 WL 837243, at *7-8 (E.D. Pa. Mar. 21, 2022) (declining to find extraordinary or compelling circumstances where a defendant suffered from hypertension, spinal stenosis, and progressive spinal degeneration).

    Furthermore, Defendant does not demonstrate that COVID pushes his proffered conditions across the finish line. Even though Defendant does allege that he had "several bouts" of COVID

(Def.'s Moving Br. 2), he fails to explain why he remains at risk of severe illness or death as a fully vaccinated individual. *See, e.g.*, *United States v. Roeder*, 807 F. App'x 157, 160-61 (3d Cir. 2020) (per curiam) ("[T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid . . . that sentence."); *United States v. Hannigan*, No. 19-373, 2021 WL 1599707, at *6 (E.D. Pa. Apr. 22, 2021) (denying compassionate release for a defendant who had diabetes, hypertension and sleep apnea because his risk of serious illness after the COVID vaccination was "significantly reduced"); *United States v. Watkins*, No. 04-309, 2021 WL 1627765, at *1-2 (W.D. Pa. Apr. 27, 2021) (concluding that the COVID vaccine meaningfully protected the defendant, who suffered from obesity and hypertension, and thus he failed to show extraordinary and compelling reasons for release). Thus, the remaining risks to Defendant simply are not extraordinary and compelling. *See United States v. Moye*, 2020 WL 6273905, at *2 (S.D.N.Y. Oct. 26, 2020) (finding that a defendant with diabetes, hypertension, and asthma failed to present extraordinary and compelling reasons in fearing COVID).

Defendant's argument that he should be granted relief based on his family circumstances is similarly unavailing. Courts have rejected compassionate release in circumstances like these. *See, e.g.*, *United States v. Doolittle*, No. 19-501, 2020 WL 4188160 (D.N.J. July 21, 2020) (denying compassionate release for inmate whose wife suffered a heart attack and has cardiovascular disease when the incarcerated individual presented no medical documentation or other competent evidence demonstrating incapacitation). Here, Defendant does not provide any evidence demonstrating that his brother is incapacitated or unable to care for himself, or any further evidence justifying his early release.

The Court, accordingly, does not find extraordinary or compelling reasons for Defendant's release, and, therefore, denies Defendant's Motion.

**B.      The § 3553(a) Factors Do Not Weigh in Favor of Granting Defendant Compassionate Release.**

To be sure, even if Defendant demonstrated "extraordinary and compelling reasons," the § 3553(a) factors that the Court must consider would still undermine his release.[1] Defendant does not meaningfully address the § 3553(a) factors, stating only that "[i]t serves no useful purpose under § 3553(a) to keep [him] imprisoned in an overcrowded prison system at [his] age and in [his] condition." (Def.'s Moving Br. 3.)

The Court disagrees. Both Defendant's underlying offense—distribution of narcotics and cocaine base while on parole—and his offenses violating his supervised release—the murder of his girlfriend and use of narcotics—are serious in nature. (Gov't's Opp'n Br. 2 (citing PSR ¶ 1); Pet. & Order.) Over a span of three years, Defendant distributed over 50 grams of cocaine base, a serious offense considering the ongoing drug epidemic in this state. (PSR ¶¶ 7-10, 12-13; 18 U.S.C. § 3553(a)(1).) Furthermore, Defendant has consistently violated during his time on parole and his time on supervised release. (*See* Gov't's Opp'n Br. 3 (citing PSR ¶¶ 58-60); Pet. & Order.) He is

---

[1] The § 3553(a) sentencing factors are (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges established for the defendant's crimes; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

classified as a career offender, and many of his prior convictions are violent in nature. (*See* Gov't's Opp'n Br. 20 (citing PSR ¶¶ 40-61).)

In general, Defendant failed to identify sentencing factors that support a reduction in sentence, nor can the Court identify any. So, the Court separately finds that a reduction in sentence is unwarranted under the sentencing factors.

IV.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Resentencing is denied. An appropriate order will follow this Memorandum Opinion.


MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE